IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:18cr333-MHT |
| | ) | (WO) |
| LAUREN HAGGARD | ) | |

OPINION AND ORDER

Defendant Lauren Haggard is before the court for sentencing on one count of possession of a firearm by a convicted felon. Domestic-violence criminal complaints by several women over the last seven years, although not resulting in convictions, contained allegations of singularly similar abusive conduct and thus strongly suggested that Haggard has history of violent and threatening conduct towards intimate partners. The criminal complaints seem to show a person with a propensity for abusive behavior towards women.

At the same time, Haggard appears to have been a victim too--of serious, untreated childhood trauma. When he was 12 years old, his mother, who was addicted to crack cocaine, admittedly left the state of Illinois

to escape her addiction and abandoned him in Chicago with no one to care for him. He spent the next several years, until he was 15 or 16, homeless. He reportedly began smoking marijuana every day and dropped out of school, and soon began getting in trouble with the law. Haggard has never received mental-health treatment for what must have been an incredibly traumatic experience during his formative years.

Studies have shown a link between childhood trauma and adult violent behavior, and with criminal-justice-system involvement more generally. See, e.g., Lena J. Jäggi, et al., *The Relationship between Trauma, Arrest, and Incarceration History among Black Americans: Findings from the National Survey of American Life*, 6 Soc. & Ment. Health No. 3, at 187-206 (2016); Emma Fulu, Ph.D., et al., *Pathways between childhood trauma, intimate partner violence, and harsh parenting: findings from the UN Multi-country Study on Men and Violence in Asia and the Pacific*, 5 The Lancet

2

No. 5, at PE512-E522 (2017). Fortunately, promising treatments for adult survivors of childhood trauma also appear to exist. *See, e.g.,* Frances K. Grossman, et al., *Treating Adult Survivors of Childhood Emotional Abuse and Neglect: A New Framework*, 87 Am. J. of Orthopsychiatry, No. 1, at 86-93 (2017).

The court is now faced with developing an appropriate sentence for Haggard. This court has held that where there is a reasonable basis to believe that a defendant's mental condition contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation. *See United States v. Kimbrough*, No. 2:07cr260, 2018 WL 989541 (M.D. Ala. Feb. 20, 2018); *see also United States v. Mosley*, 277 F. Supp. 3d 1294 (M.D. Ala. 2017) (discussing the issue of substance-abuse disorders in further detail). Such an evaluation is necessary to aid the court in fashioning an appropriate sentence, by helping to determine (1) how a defendant's mental

3

condition may have impacted his offense conduct, and therefore may mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during incarceration and supervised release.*

Here, Haggard suffered the staggering traumas of abandonment and homelessness as a child. While his childhood trauma provides no legal excuse for his possession of a firearm or his other offenses, the court seeks information as to the impact the trauma has had on Haggard and on his current and past criminal conduct. Has the trauma resulted in a diagnosable mental-health disorder, such as post-traumatic stress disorder or depression? Did the trauma he suffered impact his decision to possess a firearm, his disregard for the law, or his allegedly violent response to

---

*. By "culpability" the court does not mean whether a defendant had a defense such as insanity, or whether a defendant's action was not "voluntary" or committed with the requisite *mens rea*.

disagreements with his intimate partners?  The court also seeks recommendations, in light of Haggard's individual characteristics and history, for treatment and programs that could help Haggard recover from trauma and avoid violent, threatening, or illegal behavior in the future.

18 U.S.C. § 3552(b) provides that, if a court "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed on a defendant found guilty of a misdemeanor or felony, it may order a study of the defendant." The court may order that the presentence study of the defendant be done by the Bureau of Prisons (BOP) upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study.  18 U.S.C. § 3552(b). In this case, the court seeks, with the agreement of the parties, a comprehensive, longitudinal evaluation of Haggard's mental-health and trauma

5

history, and the development of a specialized treatment plan that will help to ensure that he does not violate the law in the future or behave in a violent manner. It is undisputed that there are no locally available resources that could provide such a comprehensive and specialized evaluation. Because there are no adequate professional resources available in the local community, the court need not reach the issue of whether there is a "compelling reason" for the inpatient study.

Also, because Haggard does not oppose being committed to a BOP facility for the mental-health evaluation, no due-process concerns are raised. *See Mosley*, 277 F. Supp. 3d at 1300.

***

Accordingly, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 3552(b), defendant Lauren Haggard is committed to the

custody of the warden of an appropriate institution as may be designated by the Attorney General, for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The United States Marshal, acting through counsel for the government, shall promptly inform the court and the parties of the facility to which defendant Haggard is designated. If defendant Haggard, who ia not in custody pending resolution of her case, chooses to self-surrender to the facility identified by the Attorney General, he must do so on or before 2:00 p.m. on April 1, 2019. If he is unable, or otherwise chooses not, to self-surrender, he must turn himself in to the United States Marshal on or before 2:00 p.m. on April 1, 2019, who in turn shall take him into custody and transport him to the facility at the earliest date possible. Once the evaluation is complete, defendant Haggard shall be released under the same conditions that he arrived at the facility. That is, if he

7

self-surrenders, he shall be released from the facility back into the free world; if he turns himself in to the United States Marshal, he shall be released into the custody of the United States Marshal, who shall transport him back to Montgomery, Alabama, whereupon she will be released back into the free world. The statutory time period for the examination shall commence on the day defendant Haggard arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrists or psychologists shall evaluate defendant Haggard's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.

(a) To assist the court in assessing defendant Haggard's culpability--that is, as a mitigating factor--the study shall discuss his mental-health

8

history and characteristics, and shall particularly address: the impact of the childhood trauma he suffered on his mental health and cognitive development, if any; whether he currently suffers or has suffered from any mental-health disorder(s) and whether the trauma likely contributed to the development of the disorder(s); whether the trauma or mental disorder(s) impacted his decision to possess a firearm; the relationship, if any, between the trauma he suffered and his apparent tendency towards violent behavior, particularly with women; the impact of the trauma and mental disorder (if any) on his ability to control his anger and on his response to perceived betrayal or abandonment; the impact of his childhood substance abuse on his mental health and cognitive development, if any; and his prognosis if he receives appropriate treatment.

(b) In addition to assessing whether defendant Haggard suffers from any mental disorder(s), the study shall provide recommendations for treatment to be

provided to him while incarcerated and on supervised release. The study should address, in light of his personal characteristics, history, and circumstances and his mental health, which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping him to refrain from engaging in illegal and violent conduct, and particularly in intimate partner violence; and which specific BOP programs are recommended, and why, in the event that he is incarcerated for an extended period of time, *see* https://www.bop.gov/inmates/custody_and_care/docs/20170914_BOP_National_Program_Catalog.pdf (describing BOP programs). In light of concerns the court has heard about the efficacy of certain anger-management programs for domestic violence offenders, the study should also address whether participation in an anger-management program is recommended for defendant Haggard, or

10

whether it is unlikely to result in improvement or could even be counterproductive.

(3) Finally, the study shall discuss any other matters the BOP believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 1st day of March, 2019.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**